## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| AYTU BIOSCIENCE, INC., JOSH DISBROW, STEVEN BOYD, GARY CANTRELL, CARL DOCKERY, JOHN DONOFRIO, JR., MICHAEL MACALUSO, and KETAN MEHTA, | ) ) ) ) ) ) ) | <u>CLASS ACTION</u> |
| Defendants. | ) | |

## <u>COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934</u>

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## <u>NATURE OF THE ACTION</u>

1. This action stems from defendants' dissemination of a materially incomplete proxy statement (the "Proxy Statement") filed with the United States Securities and Exchange Commission ("SEC") on November 21, 2019.

2. As set forth in greater detail below, the Proxy Statement recommends that the stockholders of Aytu BioScience, Inc. ("Aytu") vote on four proposals (collectively, the "Proposals") to:

1. Approve, in accordance with Nasdaq Marketplace Rule 5635(d), the convertibility of the Company's Series F convertible preferred stock, par value $0.0001 per share, and (ii) the exercisability of the PIPE Warrants, in each case, issued in a private placement offering that closed October 16, 2019 (the "Nasdaq Rule 5635(d) Proposal");

2. Approve, in accordance with Nasdaq Marketplace Rules 5635(a)(2) and 5635(d), the convertibility of the Company's Series G convertible preferred stock, par value $0.0001 per share issued to Cerecor, pursuant to that certain Asset Purchase Agreement, pursuant to which Company acquired from Cerecor the Products Business and assumed certain liabilities associated with the Products Business the ("Conversion Proposal"); []

3. Approve an amendment to our Certificate of Incorporation, to increase the number of our authorized shares of common stock from 100,000,000 to 200,000,000 shares of common stock ("Authorized Share Increase Proposal"); [and]

4. A proposal to approve the adjournment of the special meeting, if necessary, to continue to solicit votes for the Nasdaq Rule 5635(d) Proposal, the Conversion Proposal and/or the Authorized Share Increase Proposal (the "Adjournment Proposal").

3.       If Aytu's stockholders vote to approve the Nasdaq Rule 5635(d) Proposal, the Company's largest stockholder, Armistice Capital, LLC ("Armistice"), will own approximately 36.2% of the outstanding shares of Aytu's common stock.  Moreover, if the Company's stockholders vote to approve the Conversion Proposal, Armistice will own, directly and indirectly through its interest in Cerecor Inc. ("Cerecor"), approximately 46% of the outstanding shares of Company common stock.  As a result, Armistice would "be in a position to exercise significant influence over any vote of the Company's stockholders and may also have greater influence over the Company in other matters."  Notably, Individual Defendant Steven Boyd ("Boyd"), a member of Aytu's Board of Directors (the "Board"), is the Chief Investment Officer and founder of Armistice and a director of Cerecor.

4.       As set forth below, the Proxy Statement omits material information, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Aytu common stock.

9.      Defendant Aytu is a Delaware corporation and maintains its principal executive offices at 373 Inverness Parkway, Suite 206, Englewood, Colorado 80112.  Aytu's common stock is traded on the NASDAQ Capital Market under the ticker symbol "AYTU."

10.     Defendant Josh Disbrow is Chief Executive Officer and Chairman of the Board of Aytu.

11.     Defendant Boyd is a director of Aytu.  Boyd is also the Chief Investment Officer and founder of Armistice and a director of Cerecor.

12.     Defendant Gary Cantrell is a director of Aytu.

13.     Defendant Carl Dockery is a director of Aytu.

14.     Defendant John Donofrio Jr. is a director of Aytu.

15.     Defendant Michael Macaluso is a director of Aytu.

16.     Defendant Ketan Mehta is a director of Aytu.

17.     The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Aytu (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

19.     This action is properly maintainable as a class action.

20.     The Class is so numerous that joinder of all members is impracticable.  As of November 4, 2019, there are approximately 20,733,052 shares of Aytu common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

21.     Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

22.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the

4

interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

24.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of Aytu

25.     Aytu is a commercial-stage specialty pharmaceutical company focused on commercializing novel products that address significant patient needs.

26.     The Company currently markets Natesto®, the only United States Food and Drug Administration ("FDA")-approved nasal formulation of testosterone for men with hypogonadism.

27.     Aytu also has exclusive United States and Canadian rights to ZolpiMist™, an FDA-approved, commercial-stage prescription sleep aid indicated for the short-term treatment of insomnia characterized by difficulties with sleep initiation.

28.     The Company recently acquired exclusive United States commercial rights to Tuzistra® XR, the only FDA-approved twelve-hour codeine-based antitussive syrup.  Tuzistra XR is a prescription antitussive consisting of codeine polistirex and chlorpheniramine polistirex in an extended-release oral suspension.

29.     Additionally, Aytu is developing MiOXSYS®, a novel, rapid semen analysis system with the potential to become a standard of care for the diagnosis and management of male infertility caused by oxidative stress.  MiOXSYS is commercialized outside of the United States where it is a CE Marked, Health Canada cleared, Australian TGA approved, Mexican COFEPRAS approved product.  Aytu is planning United States-based clinical trials in pursuit of 510k de novo

medical device clearance by the FDA.

***The Purchase Agreement***

30.     On October 11, 2019, the Individual Defendants caused Aytu to enter into securities purchase agreements (the "Purchase Agreement") with two institutional investors – Armistice[1] and Altium Capital (together, the "Investors") – providing for the issuance and sale by the Company (the "Offering") of $10 million of (i) shares of the Company's Series F Convertible Preferred Stock (the "Series F Preferred Stock"), which are convertible into shares of common stock (the "Conversion Shares"), and (ii) warrants (the "PIPE Warrants"), which are exercisable for shares of common stock and have an exercise price equal to $1.25 (the "Warrant Shares").

31.     On October 14, 2019, Aytu issued a press release announcing the Purchase Agreement, which provided as follows:

> Aytu BioScience, Inc. (NASDAQ:AYTU), a specialty pharmaceutical company focused on global commercialization of novel products addressing significant medical needs, is pleased to announce that it has entered into definitive agreements with two institutional investors for the purchase and sale in a private placement of $10 Million of Series F Convertible Preferred Stock and warrants to purchase common stock. Institutional investors Altium Capital and Armistice Capital jointly participated in the financing.
>
> Armistice Capital is a global, long/short, value-oriented and event-driven hedge fund focused primarily on the health care and consumer sectors with over $1 billion in assets. Armistice invests predominantly in equities and seeks to maximize the opportunity set of investment candidates allowing for the selection of unique, concentrated bets to generate uncorrelated investment returns. Steven Boyd, Chief Investment Officer, founded Armistice Capital in 2012. Mr. Boyd is a member of the Board of Directors of Aytu BioScience.
>
> Altium Capital is a private investment fund founded by CEO Jacob Gottlieb. Through deep, fundamental research, Altium's team of doctors, scientists and investment professionals seeks to identify growth and development stage public companies with disruptive science and technology. Altium frequently partners with portfolio companies as they raise capital to fund the next stage of development.

---

[1] Individual Defendant Boyd, who is a member of the Aytu Board, is the Chief Investment Officer and founder of Armistice.

Following the closing of this offering, the Company's pro forma cash balance as of September 30, 2019 would have been approximately $17.3 million.

The stock purchase agreement includes the purchase of shares of convertible preferred stock that will be sold at a purchase price of $1,000 per share and convertible into 1,000 shares of common stock at $1 per share, and accompanying warrants to purchase up to one share of common stock for each share of common stock convertible from the preferred stock, with an exercise price of $1.25 per share and exercisable following shareholder approval. The private placement is expected to result in total gross proceeds of $10 million. The warrants will have a term of exercise expiring five years from the effective date.

Ladenburg Thalmann & Co. Inc., a subsidiary of Ladenburg Thalmann Financial Services Inc. (NYSE American:LTS), acted as the exclusive placement agent in connection with the offering.

The preferred stock, the common stock convertible from the preferred stock, the accompanying warrants and the common stock issuable upon exercise of the warrants will not be registered under the Securities Act of 1933, as amended (the "Securities Act") or any state securities laws and, unless so registered, may not be offered or sold in the United States except pursuant to an applicable exemption from the registration requirements of the Securities Act and applicable state securities laws. The securities will be offered only to institutional accredited investors in accordance with Section 4(a)(2) under the Securities Act and Rule 506(b) promulgated thereunder.

32.     On October 16, 2019, Aytu closed the Offering and received net proceeds of approximately $9.2 million.  The Company issued to each Investor 5,000 shares of Series F Preferred Stock with a stated value of $1,000 per share of Series F Preferred Stock and PIPE Warrants exercisable for 5,000,000 Warrant Shares.

33.     However, each Warrant will be exercisable only if the Company obtains stockholder approval of the Nasdaq Rule 5635(d) Proposal.  Moreover, each share of Series F Preferred Stock is non-convertible unless the Company receives stockholder approval of the Nasdaq Rule 5635(d) Proposal.

*The Asset Purchase Agreement*

34.     On October 10, 2019, the Company entered into an asset purchase agreement (the "Asset Purchase Agreement") with Cerecor,[2] pursuant to which the Company agreed to purchase certain assets and assume certain liabilities of Cerecor (the "Acquisition").  As consideration for the Acquisition, the Company agreed to pay aggregate consideration of approximately $32 million to Cerecor consisting of (i) cash consideration of $4.5 million; (ii) Series G Preferred Stock equal to $12.5 million; and (iii) the Company's assumption of obligations owed by Cerecor to Deerfield CSF, LLC totaling approximately $16.575 million.

35.     On October 14, 2019, Aytu issued a press release announcing the Asset Purchase Agreement, which provided as follows:

> Aytu BioScience, Inc. (NASDAQ:AYTU), a specialty pharmaceutical company focused on commercializing novel products that address significant patient needs, announced the signing of an asset purchase agreement to acquire a portfolio of prescription products from Cerecor, Inc. (the "Commercial Portfolio"). The Commercial Portfolio and accompanying commercial infrastructure generated $12.4 million in net revenue and was profitable on a standalone basis for the twelve months ending June 30, 2019. . . .

> Following the closing of this asset purchase agreement and upon the closing of the previously announced merger agreement with Innovus Pharmaceuticals, Aytu BioScience's annual revenue will exceed $44 million - based on combined trailing twelve-month revenue as of June 30, 2019. The transaction is expected to further increase revenue scale and accelerate the company's time to achieve breakeven.

> The purchased Commercial Portfolio includes prescription products competing in markets exceeding $8 billion in annual U.S. sales. The portfolio consists of six established, commercialized pediatric primary care products including: AcipHex® Sprinkle™, Cefaclor for Oral Suspension, Karbinal® ER, Flexichamber™, Poly-Vi-Flor® and Tri-Vi-Flor™. The Commercial Portfolio complements current Aytu products Natesto®, ZolpiMist™, and Tuzistra® XR. The combined total addressable U.S. market across both product portfolios exceeds $13 billion.

---

[2] Individual Defendant Boyd is a director of Cerecor.

Asset Purchase Agreement Components

☐Acquisition of the Commercial Portfolio generating $12.4 million in net revenue for the four quarters ending June 30, 2019. This portfolio includes the following product lines: AcipHex® Sprinkle, Cefaclor for Oral Suspension, Karbinal® ER, Flexichamber™, Poly-Vi-Flor® and Tri-Vi-Flor™

☐Retention of the commercial infrastructure and nationwide sales force that commercializes the Commercial Portfolio

☐Hiring of Matthew Phillips, current Chief Commercial Officer of Cerecor, as Aytu's Executive Vice President of Commercial Operations, reporting to the Chief Executive Officer

☐Assumption of contracts associated with the Commercial Portfolio inclusive of licensing and supply agreements, along with wholesaler, third-party logistics, distributor, and direct purchase agreements

☐Payment of $4.5 million in cash and $12.5 million in Aytu preferred stock, which converts into common stock upon receipt of Aytu shareholder approval; The shares are locked up through July 1, 2020 per a lock-up agreement with Cerecor.

☐Assumption of Cerecor's outstanding payment obligations to Deerfield CSF, LLC ("Deerfield Note") totaling approximately $16.575 million in principal and interest, which is payable in January 2021

☐Company expects to refinance and extend the term of the Deerfield Note following the close

☐Deerfield Note guaranteed by Armistice Capital via an escrow agreement

☐Total upfront consideration in cash and preferred stock for this $12.4M commercial portfolio is $17 million, or approximately 1.4x LTM revenue, plus the assumption of the Deerfield Note.

The purchase of the Commercial Portfolio, in conjunction with the planned acquisition of Innovus Pharmaceuticals, increases Aytu's annual revenue to over $44 million based on combined company sales over the four quarters ending June 30, 2019.

Both Innovus Pharmaceuticals and the Cerecor commercial business have operated near or above breakeven on a cash basis over the last twelve months.

The company expects to integrate the Cerecor commercial team, currently led by Matthew Phillips, into Aytu's current commercial infrastructure and realize cross-selling and cost savings across multiple product lines.

Mr. Phillips will transition from Cerecor to Aytu to serve as the company's Executive Vice President of Commercial Operations, reporting to the Chief Executive Officer. Jarrett Disbrow, the company's current Chief Operating Officer, will assume the role of Executive Vice President of Marketing and Market Access, continuing to report to the Chief Executive Officer. The company expects to further leverage operational efficiencies and achieve subsequent cost savings across the organization.

The asset purchase agreement is expected to close following the receipt of all required consents to the transaction and upon the satisfaction of certain obligations of Cerecor relating to the delivery of audited financial statements.

36.     The Acquisition closed on October 31, 2019, at which time the Company paid to Cerecor $4.5 million and issued to Cerecor 9,805,845 million shares of Series G Preferred Stock.

37.     If the Company's stockholders vote to approve the Conversion Proposal, the Company will issue 9,805,845 million shares of common stock upon the conversion of the Series G Preferred Stock.[3]

**_The Proxy Statement Recommends Stockholder Approval of the Proposals_**

38.     Defendants filed the Proxy Statement with the SEC on November 21, 2019.[4]

39.     The Proxy Statement recommends that the Company's stockholders vote to approve the Proposals, including the Nasdaq Rule 5635(d) Proposal and the Conversion Proposal.

40.     As set forth in the Proxy Statement, Aytu is seeking stockholder approval of the Nasdaq Rule 5635(d) Proposal because:

---

[3] As set forth in the Proxy Statement: "Steven Boyd, a director of both Aytu and Cerecor, is the Chief Investment Officer and a director of Armistice, which is a significant shareholder of both Aytu and Cerecor. As a significant shareholder of both companies, Armistice will have significant influence on the outcome of the vote of Aytu's stockholders regarding the Conversion Proposal and will have an indirect interest in a substantial portion of the shares of common stock issuable upon conversion of the Series G Preferred Stock."

[4] The Proxy Statement is a revised version of a preliminary proxy statement filed with the SEC on November 4, 2019 (the "Preliminary Proxy").  The Preliminary Proxy scheduled a stockholder vote on the Proposals for December 13, 2019.  However, the stockholder vote date was deleted in the November 21, 2019 Proxy Statement.

As a result of being listed for trading on the Nasdaq Capital Market, issuances of our common stock are subject to the Nasdaq Stock Market Rules, including Nasdaq Marketplace Rule 5635(d). Nasdaq Marketplace Rule 5635(d) requires stockholder approval in connection with a transaction other than a public offering involving the sale, issuance, or potential issuance by the issuer of common stock (or securities convertible into or exercisable for common stock) equal to 20% or more of the common stock or 20% or more of the voting power outstanding before the issuance for a price that is less than the lower of: (i) the closing price (as reflected on Nasdaq.com) immediately preceding the signing of the binding agreement; or (ii) the average closing price of the common stock (as reflected on Nasdaq.com) for the five trading days immediately preceding the signing of the binding agreement.

As described above, the Series F Preferred Stock and the PIPE Warrants are not convertible or exercisable into shares of common stock until Stockholder Approval is received through the approval of this Nasdaq Rule 5635(d) Proposal. However, if our stockholders approve the convertibility of the Series F Preferred Stock and the exercisability of the PIPE Warrants, the issuance of the Conversion Shares and the Warrant Shares may result in us issuing 20% or more of our common stock outstanding, or 20% or more of our voting power.

41.     Moreover, the Company is seeking stockholder approval of the Conversion Proposal because:

The Company's common stock is listed on the Nasdaq Capital Market and, as such, it is subject to the Nasdaq Marketplace Rules. Nasdaq Marketplace Rule 5635(a)(2) requires that an issuer obtain stockholder approval prior to the issuance of common stock in certain circumstances, including in connection with the acquisition of stock or assets of another company if any director, officer or "substantial shareholder" has a 5% or greater interest directly or indirectly in the assets to be acquired or in the consideration to be paid in the transaction and the present or potential issuance of common stock, or securities convertible into or exercisable for common stock, could result in an increase in outstanding common shares or voting power of 5% or more.

Armistice currently owns approximately 28% of our outstanding shares of common stock, making Armistice a "substantial shareholder" of the Company. Armistice also owns approximately 63% of the outstanding shares of common stock of Cerecor. As disclosed in the "Nasdaq Rule 5635(d) Proposal", Steven Boyd serves as a member of the Company's board of directors and also serves as a member of the board of directors of Cerecor. As a result of Armstice's interest in Cerecor, Armistice would have indirect interest in more than 5% of the shares of Series G Preferred Stock, and the underlying shares of common stock, issued to Cerecor in connection with the Acquisition, and, therefore, stockholder approval of the issuance of the underlying shares of common stock is required. . . .

As described above, subject to other conversion restrictions, the Series G Preferred Stock is not convertible into shares of common stock until stockholder approval is received through the approval of this Conversion Proposal. If our stockholders approve the convertibility of the Series G Preferred Stock, the issuance of the shares of common stock upon the conversion of the Series G Preferred Stock will result in us issuing 20% or more of the common stock outstanding, or 20% or more of the voting power, and therefore, we are seeking shareholder approval of the issuance of the underlying common stock.

42.     If Aytu's stockholders vote to approve the Nasdaq Rule 5635(D) Proposal and Armistice converts the shares of Series F Preferred Stock into Conversion Shares, Armistice will own approximately 36.2% of the outstanding shares of Aytu common stock.  Accordingly, and as set forth in the Proxy Statement, "Armistice will be in a position to exercise significant influence over any vote of the Company's stockholders and may also have greater influence over the Company in other matters."

43.     Furthermore, if the Company's stockholders vote to approve the Conversion Proposal and Cerecor converts the shares of Series G Preferred Stock into shares of common stock, Armistice will own, directly and indirectly through its interest in Cerecor, approximately 46% of the outstanding shares of Company common stock.  Accordingly, "Armistice will be in a position to exercise significant influence over any vote of the Company's stockholders and may also have greater influence over the Company in other matters."

***The Proxy Statement Omits Material Information***

44.     As set forth below, the Proxy Statement omits material information, rendering Aytu's stockholders unable to decide whether to vote in favor of the Proposals.

45.     The Proxy Statement fails to disclose the financial projections and analyses that the Individual Defendants considered and relied upon in coming to their decision to approve the Purchase Agreement and Asset Purchase Agreement (together, the "Agreements").

46.     The Proxy Statement fails to disclose whether the Individual Defendants engaged a financial advisor in connection with the Agreements.  If the Individual Defendants engaged a financial advisor, the Proxy Statement fails to disclose the terms of the financial advisor's engagement, including: (i) the amount of compensation the financial advisor has received or will receive in connection with its engagement; (ii) whether the financial advisor has performed past services for any parties to the Agreements or their affiliates; (iii) the timing and nature of such services; and (iv) the amount of compensation received by the financial advisor for such services.

47.     The Proxy Statement fails to disclose a fair summary of the process and negotiations leading up to the execution of the Agreements.

48.     The Proxy Statement fails to disclose whether the Individual Defendants considered any alternatives to the Agreements.

49.     The Proxy Statement fails to disclose the nature of the involvement of Individual Defendant Boyd in the process leading up to the execution of the Agreements.  As set forth above, Boyd is Chief Investment Officer and founder of Armistice and a director of Cerecor.

50.     The Proxy Statement fails to disclose whether the Individual Defendants formed a special committee of the Board in connection with the negotiation of the Agreements.

51.     The Proxy Statement fails to disclose whether Boyd voted to approve the Agreements.

52.     The Proxy Statement fails to disclose any details with respect to Ladenburg Thalmann & Co. Inc. ("Ladenburg") acting as the exclusive placement agent in connection with the Offering, including the amount of compensation Ladenburg stands to receive in connection therewith.

53.     The omission of the above-referenced material information renders the Proxy Statement false and misleading.

54.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Aytu's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Aytu

55.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Aytu is liable as the issuer of these statements.

57.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within Aytu, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

58.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

59.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposals.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

60.     The Proxy Statement is an essential link in causing plaintiff to approve the Proposals.

61.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

62.     Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

63.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.     The Individual Defendants acted as controlling persons of Aytu within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Aytu and participation in and/or awareness of Aytu's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Aytu, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

65.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

66.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Aytu, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same.  The Individual Defendants were directly involved in the making of the Proxy Statement.

67.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

68.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with the stockholder vote on the Proposals;

B.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

D.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: November 26, 2019

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)

**OF COUNSEL:**                        300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
**RM LAW, P.C.**                        Telephone: (302) 295-5310
Richard A. Maniskas                    Facsimile: (302) 654-7530
1055 Westlakes Drive, Suite 300        Email: sdr@rl-legal.com
Berwyn, PA 19312                       Email: bdl@rl-legal.com
Telephone: (484) 324-6800              Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com                 *Attorneys for Plaintiff*